```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
DEANNA REISS,                            :        19cv1780 (DLC)
                                         :
                          Plaintiff,     :      OPINION AND ORDER
              -v-                        :
                                         :
NATIONAL RAILROAD PASSENGER CORP.,       :
                                         :
                          Defendant.     :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff:
Deanna Reiss pro se

For defendant:
Shayna Antoinette Bryan
Sophia Ree
Mark S. Landman
Landman Corsi Ballaine Ford PC
120 Broadway
New York, NY 10271

DENISE COTE, District Judge:

     Deanna Reiss has sued defendant National Railroad

Passenger Corp. ("Amtrak") for negligence over injuries that she

sustained after she was allegedly thrown from her seat on one of

Amtrak's trains.  Amtrak has moved for summary judgment on

Reiss's claim.  For the following reasons, Amtrak's motion is

granted.

## **Background**

     The following facts are taken in the light most favorable

to the plaintiff.  Many of the facts are undisputed.  On May 18,

2018, Deanna Reiss boarded an Amtrak train in Washington, D.C., headed for Penn Station in New York.  The train had been delayed several hours.  On the way to New York, Reiss fell asleep and continued sleeping through the train's final stop at Penn Station.  Some time after leaving Penn Station, the train pulled into the Sunnyside railyard in Queens.

Reiss claims that she was awakened by the feeling of a sudden stop as the train pulled into the railyard.  Reiss says that she was thrown forward, hit her hip and head, and was knocked unconscious on the floor several rows in front of her seat.[1]  Reiss was eventually discovered by Amtrak employees, brought back to Penn Station, and sent home in a taxi cab.

Reiss suffers from several preexisting medical conditions that cause her pain, nausea, and occasional loss of consciousness.  She asserts that her symptoms have been exacerbated by the injuries she suffered during this incident.

Reiss brought this suit on February 7, 2019 before the New York County Supreme Court, alleging that Amtrak negligently failed to check the train for passengers at Penn Station, and that it negligently brought the train to a sudden halt at Sunnyside railyard.  The case was removed to the Southern

---

[1] Amtrak disputes Reiss's description of events, claiming that its employees found Reiss sleeping upright in her seat, rather than lying on the floor.

District of New York on February 26, 2019, and was reassigned to this Court on September 9, 2021.  At a conference with the parties on September 21, the parties identified what remained to be accomplished to conclude discovery.  Only the defendant had produced an expert report, and a scheduling Order provided that depositions of expert witnesses must be taken by November 12.

Amtrak filed the present motion for summary judgment on February 11, 2022.  With its motion, Amtrak submitted data from the train's logs showing that the train had come to a smooth and slow stop at the Sunnyside railyard.  Reiss opposed the motion on March 29, but abandoned her claim that the train had come to an unusually sudden stop.  She continues to press her claim that her injuries were due to Amtrak's failure to check the train for passengers at Penn Station.  The motion became fully submitted on April 13.

## Discussion

Summary judgment may only be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "To present a genuine issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence such that a reasonable jury could return a verdict for the nonmoving party."  Horror Inc. v. Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted).

Material facts are those facts that "might affect the outcome of the suit under the governing law." Choi v. Tower Rsch. Cap. LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted).  In considering a motion for summary judgment, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Kee v. City of New York, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted).

> I.   Negligence

"Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." Borley v. United States, 22 F.4th 75, 79 (2d Cir. 2021) (citation omitted).  "[T]he definition, and hence the existence, of a duty relationship is usually a question for the court." Id. "[F]oreseeability defines the scope of a duty once it has been recognized." In re N.Y.C. Asbestos Litig., 27 N.Y.3d 765, 788 (2016).  In determining the scope of a duty, courts analyze "whether the relationship of the parties is such as to give rise to a duty of care, whether the plaintiff was within the zone of foreseeable harm, and whether the accident was within the reasonably foreseeable risks." Di Ponzio v. Riordan, 89 N.Y.2d 578, 583 (1997).

Common carriers owe passengers a duty to exercise reasonable care.  Boyd v. Manhattan & Bronx Surface Transit Operating Auth., 9 N.Y.3d 89, 92 (2007).  A common carrier may breach this duty when one of its vehicles comes to an unusually sudden and violent stop, injuring a passenger.  See Urquhart v. N.Y.C. Transit Auth., 85 N.Y.2d 828, 829-30 (1995).  To recover for such injuries, however, a plaintiff must provide "objective evidence" that "the stop caused a jerk or lurch that was unusual and violent."  Id. at 830 (citation omitted).  Reiss concedes that she has no such evidence.  Accordingly, Reiss cannot sustain a claim that Amtrak negligently caused her injuries by bringing its train to a sudden or violent stop.

Instead, Reiss argues that Amtrak was negligent because it failed to check for passengers at the train's last stop in Penn Station.  She claims that, but for this failure, she would not have been on the train as it traveled to Sunnyside railyard, and therefore would not have been thrown from her seat.

Reiss has not shown, however, that Amtrak has a duty to check for passengers at the last stop.  Reiss cites to no authority prescribing such a duty, instead relying generally on the proposition that common carriers owe passengers an elevated duty of care.  This standard, however, has been overruled, and common carriers must now satisfy only "the traditional, basic

negligence standard of reasonable care under the circumstances."
Boyd, 9 N.Y.3d at 92 (citation omitted).

Moreover, even if there were a duty to check for passengers
at the last stop, it would not apply to the claim at issue here.
A person is liable for breach of a duty of care only when the
breach "causes an occurrence that is within the class of
foreseeable hazards that the duty exists to prevent."  Di
Ponzio, 89 N.Y.2d at 584.  In other words, negligence liability
attaches only when the defendant's conduct "increase[s] the risk
of the type of harm that occurred."  Restatement (Third) of
Torts § 30.  Reiss, however, has not shown that a failure to
check for passengers at the last stop increases the likelihood
of the kind of injuries that she suffered while asleep.  She has
provided no evidence to suggest that sleeping passengers are
more likely to be thrown from their seats after a train's last
stop than during the train journey that preceded that stop.  A
duty to check for passengers at the last stop would therefore do
little to prevent such injuries.

For similar reasons, Reiss has failed to offer evidence
that the failure to check for passengers at Penn Station was the
proximate cause of her injuries.  Proximation causation is an
essential element of a tort claim.  Borley, 22 F.4th at 78.

Reiss references deposition testimony in which Amtrak's
employees stated that Sunnyside railyard was a "dangerous

place."  Reiss, however, has not identified where in the

deposition transcripts such a statement can be found.  And

regardless, Reiss has not presented any evidence that these

purported dangers include an increased likelihood to be thrown

from one's seat, that they otherwise affect passengers still on

the train, or that they are relevant to her negligence claim.

II.  Expert Affidavit

In addition to the evidence discussed above, Reiss has

included with her opposition an affidavit from Ely Reiss (the

"Reiss Affidavit"), her father and a purported thermodynamics

expert, which states that the plaintiff was thrown from her seat

as a result of lateral acceleration caused by the various turns

between Penn Station and Sunnyside railyard.  This affidavit

introduces a new theory of liability, and for that reason alone

could be rejected.  In addition, because this affidavit was not

timely submitted, and would be inadmissible regardless, it need

not be considered.  Even if it were considered, however, it

would not raise a dispute of material fact.

Under the Federal Rules of Civil Procedure, expert

witnesses must be timely disclosed and supported by a written

report.  Fed. R. Civ. P. 26(a)(2)(C).  The Reiss Affidavit,

however, was not revealed during the time expert disclosures

were scheduled to be made or at any time during the period for

discovery.  Instead, it was presented for the first time on

March 29 -- months after the close of expert discovery -- when

the plaintiff filed it with her opposition to the motion for

summary judgment.  Because the Reiss Affidavit was submitted in

contravention of the Federal Rules of Civil Procedure and this

Court's scheduling Order, it need not be considered in

connection with this motion.  See Softel, Inc. v. Dragon Med. &

Sci. Commc'ns, Inc., 118 F.3d 955, 961-63 (2d Cir. 1997)

(upholding the exclusion of expert testimony from trial where

the expert report was not submitted until after the discovery

deadline).

Even if the Reiss Affidavit were timely disclosed, however,

it could not be used to oppose Amtrak's motion for summary

judgment, because it does not contain admissible testimony.  See

Fed. R. Civ. P. 56(c)(2).  Expert testimony may be admitted when

the expert's "scientific, technical, or other specialized

knowledge will help the trier of fact to understand the evidence

or to determine a fact in issue."  Fed. R. Evid. 702(a).  Before

admitting expert testimony, however, a court must ensure that

the expert is qualified to provide the testimony and that the

evidence "is not only relevant, but reliable."  Restivo v.

Hessemann, 846 F.3d 547, 575 (2d Cir. 2017) (quoting Daubert v.

Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993)).  Making the

latter determination requires "a rigorous examination of the

facts on which the expert relies, the method by which the expert

draws an opinion from those facts, and how the expert applies
the facts and methods to the case at hand."  In re Mirena IUS
Levonorgestrel-Related Prods. Liability Litig. (No. II), 982
F.3d 113, 123 (2d Cir. 2020) (citation omitted).

The plaintiff has not shown that her father is qualified to
give the opinions that are contained in her report.  Moreover,
the Reiss Affidavit offers no basis upon which to evaluate the
reliability of those opinions.  It contains conclusory
assertions that an object in the plaintiff's seat on the train
"would definitely be thrown from the seat," but provides no
evidence, calculation, or reasoning to support this conclusion.
This kind of conclusory assertion is insufficient to raise a
dispute of material fact, even when contained within a purported
expert report.  See Major League Baseball Props., Inc. v.
Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008).

Finally, even if the Reiss Affidavit were timely and
sufficiently reliable to be admissible, it would not save the
plaintiff's claim from summary judgment.  The report at most
shows that Reiss could have fallen from her seat before the
train pulled into the railyard.  It does not purport to show
that such an occurrence was foreseeable, that it was more likely
to occur on the tracks after the train's last stop than before
that stop, or that the fall was otherwise due to Amtrak's
negligence.

Reiss has provided no evidence showing that her injuries were a foreseeable result of or proximately caused by Amtrak's conduct.  Accordingly, she has raised no dispute of material fact with respect to her negligence claim.

### Conclusion

Amtrak's February 11, 2022 motion for summary judgment is granted.  The Clerk of Court shall enter judgment for the defendant and close the case.


Dated:    New York, New York
          May 3, 2022

                            _____
                                  DENISE COTE
                            United States District Judge